UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Katherine L. Rich,

    Plaintiff,

v.                                          Civil Action No. 2:11-CV-85

Commissioner of Social Security,

    Defendant.

**OPINION AND ORDER**
(Docs. 6, 10)

Plaintiff Katherine L. Rich brings this action pursuant to 42 U.S.C. § 405(g) of the Social Security Act, requesting review and remand of the decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits. Pending before the Court are Rich's motion to reverse the Commissioner's decision (Doc. 6), and the Commissioner's motion to affirm the same (Doc. 10). For the reasons stated below, the Court GRANTS Rich's motion; DENIES the Commissioner's motion; and REMANDS the matter for further proceedings and a new decision.

**Background**

Rich was thirty-two years old on the date she alleges she became disabled, May 1, 2004. She is educated through high school, and thereafter attained an associate's degree in radiation therapy from the University of Vermont. She has worked as a waitress, a housecleaner, a house painter, and a radiation therapist.

The record reveals that Rich had a difficult childhood, enduring physical abuse by her brother from the time she was a toddler until she was a teenager.  In 1997, she married a man who had an extensive criminal history and abused drugs and alcohol.  He was physically abusive towards Rich and served time in jail as a result.  The couple has since divorced.  Rich was close with her father, and had a difficult time coping with his death in August 2003.  She has two children, who were approximately ages four and fourteen on the alleged disability onset date.  In March 2004, Rich stopped working.  She claims she was so depressed that she could not get out of bed, take care of her personal hygiene, do any housework, or care for her children.  Around this time, Rich abused cocaine and alcohol, and committed crimes such as driving under the influence, shoplifting, and selling drugs, resulting in her incarceration from June 2005 until October 2008.  In January 2005, she lost custody of her children, and since then, her parental rights have been terminated.  In or around the spring of 2008, while Rich was incarcerated, she began experiencing non-epileptic seizure-like spells.  She has also suffered from depression, anxiety, sleeping problems including nightmares, and fainting spells; and has been diagnosed with post-traumatic stress disorder ("PTSD") and attention-deficit/hyperactivity disorder ("ADHD").

In October 2008, Rich filed applications for disability insurance benefits ("DIB") and supplemental security income.  In her DIB application, she alleged that, starting on May 1, 2004, she has been unable to work as a result of her PTSD, depression, anxiety, and fainting disorder.  (AR 165.)  She explained that, due to her "long history of familial and spousal physical abuse," she has had frequent nightmares and has been afraid to

leave her home, and has had panic attacks.  (*Id.*)  She further explained that her anxiety has interfered with her ability to concentrate, remember instructions, and complete tasks; she has been tired all the time and has frequently napped during the day; and she has injured herself when fainting, "to the point that she [wa]s allowed to stay on her bed [in jail] almost all day."  (*Id.*)

Rich's application was denied initially and upon reconsideration, and she timely requested an administrative hearing.  On August 11, 2010, Administrative Law Judge ("ALJ") Robert Klingebiel conducted a hearing, at which Rich appeared and testified, and was represented by counsel.  (AR 23-43.)  On October 14, 2010, the ALJ issued a decision finding that Rich had not been disabled from May 1, 2004, the alleged onset date, through the date of the decision.  (AR 7-16.)  The Decision Review Board did not complete its review of the claim within the required time period, making the ALJ's decision final.  (AR 1-3.)  Having exhausted her administrative remedies, Rich filed the Complaint in this action on April 1, 2011.  (*See* Doc. 1.)

## **ALJ Determination**

The Commissioner uses a five-step sequential process to evaluate disability claims.  *See Butts v. Barnhart*, 388 F.3d 377, 380-81 (2d Cir. 2004).  The first step requires the ALJ to determine whether the claimant is presently engaging in "substantial gainful activity."  20 C.F.R. §§ 404.1520(b), 416.920(b).  If the claimant is not so engaged, step two requires the ALJ to determine whether the claimant has a "severe impairment."  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the ALJ finds that the claimant has a severe impairment, the third step requires the ALJ to make a determination as to

3

whether the claimant's impairment "meets or equals" an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings").  20 C.F.R. §§ 404.1520(d), 416.920(d).  The claimant is presumptively disabled if the impairment meets or equals a listed impairment.  *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984).

If the claimant is not presumptively disabled, the fourth step requires the ALJ to consider whether the claimant's "residual functional capacity" ("RFC") precludes the performance of his or her past relevant work.  20 C.F.R. §§ 404.1520(f), 416.920(f).  The fifth and final step requires the ALJ to determine whether the claimant can do "any other work."  20 C.F.R. §§ 404.1520(g), 416.920(g).  The claimant bears the burden of proving his or her case at steps one through four, *Butts*, 388 F.3d at 383; and at step five, there is a "limited burden shift to the Commissioner" to "show that there is work in the national economy that the claimant can do," *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (clarifying that the burden shift to the Commissioner at step five is limited, and the Commissioner "need not provide additional evidence of the claimant's residual functional capacity").

Employing this sequential analysis, ALJ Klingebiel first determined that Rich had not engaged in substantial gainful activity since May 1, 2004, the alleged disability onset date.  (AR 9.)  At step two, the ALJ found that Rich had the following severe impairments: "an anxiety disorder and a substance abuse disorder."  (AR 10.)  The ALJ discussed Rich's non-epileptic seizures and depression, but did not find either impairment to be severe.  (*Id.*)  At step three, the ALJ found that Rich did not have an impairment or combination of impairments that met or medically equaled a listed impairment.  (AR 10-

11.)  Next, the ALJ determined that Rich had the RFC to perform a full range of work at all exertional levels but with the following nonexertional limitations: "she is limited to simple work-related instructions involving no intense social interaction."  (AR 11.)  At step four, the ALJ determined that Rich was unable to perform any past relevant work.  (AR 15.)  And at step five, he concluded that there were jobs existing in significant numbers in the national economy that Rich could perform.  (*Id.*)  The ALJ explained that, although Rich's ability to perform work had been compromised by nonexertional limitations, these limitations had "little or no effect on the occupational base of unskilled work at all exertional levels," and thus a finding of "not disabled" was appropriate "under the framework of section 204.00 in the Medical-Vocational Guidelines."  (AR 16.)

## Standard of Review

The Social Security Act defines the term "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  A person will be found to be disabled only if it is determined that his "impairments are of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

In reviewing a Commissioner's disability decision, the court limits its inquiry to a "review [of] the administrative record *de novo* to determine whether there is substantial

5

evidence supporting the . . . decision and whether the Commissioner applied the correct legal standard." *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002) (citing *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000)); *see* 42 U.S.C. § 405(g).  A court's factual review of the Commissioner's decision is limited to determining whether "substantial evidence" exists in the record to support such decision.  42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991).  "Substantial evidence" is more than a mere scintilla; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Poupore*, 566 F.3d at 305.

Although the reviewing court's role with respect to the Commissioner's disability decision is "quite limited[,] and substantial deference is to be afforded the Commissioner's decision," *Hernandez v. Barnhart*, No. 05 Civ. 9586, 2007 WL 2710388, at *7 (S.D.N.Y. Sept. 18, 2007) (quotation marks and citation omitted), the Social Security Act "must be construed liberally because it is a remedial statute that is intended to include, rather than exclude, potential recipients of benefits," *Jones v. Apfel*, 66 F. Supp. 2d 518, 522 (S.D.N.Y. 1999); *Dousewicz v. Harris*, 646 F.2d 771, 773 (2d Cir. 1981) ("In its deliberations the District Court should consider the fact that the Social Security Act is a remedial statute to be broadly construed and liberally applied.").

## Analysis

### I.     ALJ's Consideration of Rich's Seizures, Depression, PTSD, and ADHD

Rich claims that the ALJ did not properly consider her seizures, depression, PTSD, and ADHD, separately or in combination.  The Court agrees.

The ALJ failed to discuss Rich's PTSD and ADHD anywhere in his decision, even though these diagnoses were made by multiple medical providers and were consistently discussed throughout the record. (*See, e.g.,* AR 623, 628, 632, 634, 762, 776-82, 989-96, 998-99, 1008, 1013-24, 1139.)[1] In contrast, the ALJ acknowledged and discussed Rich's seizures and depression throughout his decision. (AR 10-13.) Yet still, the ALJ did not find either impairment to be "severe" and does not appear to have included limitations for these impairments in his RFC determination. This is despite the record revealing that Rich's seizures occurred at least twice and at most four times weekly, and included some or all of the following associated symptoms: altered consciousness or loss of consciousness, eye twitching, bowel incontinence, lip smacking, falling, staring, tongue biting, unresponsiveness, urinary incontinence, and headache. (*See, e.g.,* AR 33-34, 720, 987, 998, 1058.) Another significant fact that appears to have gone largely unrecognized by the ALJ is that each of Rich's three primary treatment providers (Dr. Brooklyn, Nurse Manion, and counselor Berna) opined that she would miss three or more days of work each month due to her mental impairments, including PTSD. (AR 985, 1149, 1154.) The ALJ discounted either the existence or the limiting effect of Rich's seizures, stating that there is no evidence linking them "with anything other than [Rich's] psychiatric impairments," and that it is unclear in the record whether they occurred two or five days

---

[1] The record indicates that Rich may have used cocaine during the period considered by the ALJ, for example, when she was diagnosed with ADHD. (*See, e.g.,* AR 989, 992.) Although this could have affected the disability determination, the ALJ did not consider it as a factor in his decision (nor do the parties address it in their motions); and thus the Court does not consider it here. Also noteworthy, some of the relevant medical records are dated well past the date last insured of December 31, 2007. But again, the ALJ did not consider this as a factor in his decision, and thus the Court does not consider it here.

7

each week.  (AR 10, 13.)  But whether the cause of an impairment is psychological or physical does not affect how functionally limiting it is.  Moreover, it would seem that having episodes of diminished or loss of consciousness even only two times each week could preclude full-time work.[2]

It is well established in the Second Circuit that "'the combined effect of a claimant's impairments must be considered in determining disability; the [Commissioner] must evaluate their combined impact on a claimant's ability to work, regardless of whether every impairment is severe.'"  *Burgin v. Astrue*, 348 F. App'x 646, 647 (2d Cir. 2009) (quoting *Dixon v. Shalala*, 54 F.3d 1019, 1031 (2d Cir. 1995)); *see* 20 C.F.R. § 404.1523.  Here, the ALJ found that Rich suffered from the severe impairment of "an anxiety disorder" (AR 10), and was limited to "simple" instructions and "no intense social interaction."  Yet the ALJ did not discuss Rich's combined impairments – including her PTSD, ADHD, depression, and seizures – and does not appear to have included limitations for these impairments in his RFC determination.  The Commissioner argues that the ALJ was not required to consider Rich's PTSD or ADHD because he considered "symptoms potentially associated with these disorders, including depression and fearful thoughts."  (Doc. 10 at 7.)  But the medical evidence demonstrates that Rich's treating providers assessed her depression, seizures, PTSD, and ADHD as separate diagnoses; if the ALJ rejected such assessment, he was required to say so and explain why.  *See Burgin,* 348 F. App'x at 648.

---

[2] This is not an issue for the Court to decide, and neither party substantially addresses it in in their motions.  As discussed in more detail below, on remand, the ALJ should obtain the services of a vocational expert to assist in the determination of whether having a non-epileptic seizure involving diminished or loss of consciousness approximately two-to-five days each week would preclude work.

## II.   ALJ's Consideration of Medical Opinions

Rich also claims that the ALJ erred in his consideration of the medical opinions, particularly those of Rich's treating therapists, Daniel Hall and Sandra Berna, and her treating psychiatric nurse practitioner, Patricia Manion.  The Court agrees.

### A.   Daniel Hall, MA, NCC

The record contains the progress notes of Daniel Hall, MA, NCC[3], who treated Rich's depression and other symptoms.  (*See, e.g.,* AR 730-38, 842-55, 1063-1133.)  These notes summarize Hall and Rich's discussions regarding events and stressors happening in Rich's life, Rich's struggle to stay sober, and Rich's progress towards her goal of preventing a drug or alcohol relapse.  (*Id.*)  The ALJ stated that he gave "moderate weight" to Hall's "opinions," but seems to have been referring only to those portions of Hall's notes which state that Rich was "making good progress towards her goals."  (AR 14.)  Moreover, the ALJ appears to have ignored that Rich's "treatment goal," with respect to her counseling with Hall, was "relapse prevention" and not alleviating the symptoms of her depression or PTSD, or increasing her ability to function.  (*See, e.g.,* AR 730-38, 842-55, 1063-1133.)  In fact, despite stating in many of his notes that Rich was progressing towards her goal of preventing relapse, Hall recognized that Rich was still suffering from depression, PTSD, and seizures; and was struggling to engage in activities and go out in public.  (*See, e.g.,* AR 734, 736, 851.)

Furthermore, the ALJ's brief discussion of Hall's notes suggests a misunderstanding regarding mental illness.  The very nature of the disease is that the

---

[3] The initials "NCC" stand for National Certified Counselor.

9

afflicted experience fluctuations in their symptoms; thus, a notation that a patient has a "good day" or is progressing towards her goal does not imply that the condition has been treated or is even improving. *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011). In fact, in this case, the record contains treatment notes which reveal that, although Rich may have had some good periods, she had some difficult periods as well. For example, Hall's May 2009 progress note documents a period where Rich was doing particularly poorly and suffered a relapse:

> [Rich] reports that after spending 4 days inpatient to have her seizures tested she has felt both physically and emotionally drained. [Rich] reports that her seizures/dissociations are PTSD related and that there is little medication can do. [Rich] sad that since leaving the hospital she has had over 50 seizures, has felt sick, and has slept and isolated non-stop. [Rich] disclosed that besides the abusive relationships she has already talked about she was molested regularly by her older brother. She became very emotional and unstable when discussing this. She also reported that she relapsed after getting out of the hospital.

(AR 851.) Other relevant progress notes from Hall state as follows: "reports abstinence but continued depression and symptoms of PTSD . . . identified several activities that she wants to engage in but is struggling to find the motivation to do so" (AR 734); and (quoting Rich) "'I want to get out and do things but I am just so afraid and find myself slinking into corners'" (AR 736). The ALJ should not have "cherry-picked" from Hall's treatment notes – without explanation – giving weight only to the boilerplate statement that Rich was progressing towards her goals while ignoring other substantive detail. *Scott*, 647 F.3d at 740; *Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004) ("The ALJ is not entitled to pick and choose from a medical opinion, using only those parts that are favorable to a finding of nondisability.").

10

### B. Sandra Berna, LCMHC

Next, Rich contends the ALJ erred in his consideration of the opinion of Sandra Berna, LCMHC. Berna counseled Rich for approximately nine months, and opined that Rich was markedly restricted in her ability to understand, remember, and carry out complex instructions; make judgments on complex work-related decisions; and interact appropriately with supervisors and co-workers. (AR 1152-53.) She further opined that Rich would be absent from work more than four days each month. (AR 1154.) She explained as follows:

> [Rich] meets the criteria for [PTSD] and symptoms reported include intrusive memories, flashbacks, overly anxious, easily triggered, hypervigilence, avoidance of certain people, men, crowds and certain situations, nightmares, a sense of horror and helplessness related to past traumas, worry that she will not live as long as others, a severe startle response, low mood with severe tearfulness at times, low energy, severe sleep disturbance, poor focus and concentration, low motivation, isolating, poor self[-]esteem, and poor interpersonal boundaries marked by chaotic relationships, poor judgment and impulsivity. In addition, [Rich] has multiple medical issues including traumatic brain injury causing seizures that impede her ability to maintain stable functioning and her ability to complete activities of daily living consistently.

(AR 1151.) Berna concluded that "it is unlikely that [Rich] would be able to maintain [the] stability to be able to work gainfully, however, she would benefit from engaging in ongoing volunteer work as a way to give back to the community." (*Id.*)

The ALJ gave "little weight" to this opinion, on the stated grounds that it was inconsistent and not supported by treatment notes "or the record in general." (AR 15.) The ALJ did not explain what aspects of Berna's opinion he believed to be inconsistent, but it can be deduced from the decision that he found it inconsistent to say that Rich was

11

unable to work but was nonetheless able to do volunteer work. The ALJ should not have weighed this statement so heavily, however, as it is likely that Berna meant Rich could do volunteer work on a less demanding and more flexible schedule than would be required for full-time work. *See Curley v. Astrue*, No. 06-624-GMS, 2009 WL 813112, at *7 (D. Del. Mar. 27, 2009). Generally, volunteer work is less stressful than paid work. *Id.* at *7 n.8. If the ALJ was troubled by this portion of Berna's opinion, he should have sought clarity from either Berna or Rich. *Id.* at *7 ("If the ALJ wished to know why [the claimant] could apparently do [volunteer work] and not [paid work], he could, and should, have asked [the claimant] that question himself while he was under oath.").

Additionally, although Berna was not an "acceptable medical source," and thus the ALJ was not required to analyze her opinion under the treating physician rule, 20 C.F.R. § 416.913(a), the ALJ should have evaluated her opinion in more depth. Social Security Ruling ("SSR") 06-03p discusses how ALJs should evaluate the opinions of medical sources who are not "acceptable medical sources," including nurses, physicians' assistants, therapists, and licensed clinical social workers. SSR 06-03p, 2006 WL 2329939, at *3 (Aug. 9, 2006). The ruling states: "Opinions from these [other] sources . . . who are not technically deemed 'acceptable medical sources' under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file." *Id.* The ruling then directs ALJs to use the same factors for the evaluation of opinions from these "other sources" as are used to evaluate opinions from "acceptable medical sources," including treating physicians. *Id.* at *4 (citing 20 C.F.R. §§ 404.1527(d), 416.927(d)). These

factors include but are not limited to the length of the treatment relationship, the frequency of evaluation, and the degree to which the medical source provided evidentiary support for his or her opinion. *Id.*

Applying these factors here, the ALJ failed to note that Berna had a personal treatment relationship with Rich. He also failed to juxtapose Rich and Berna's treatment relationship against the lack of such a relationship between Rich and agency consultants Drs. Farrell and Conley, generically affording "great weight" to the consultants' opinions on the grounds that they were "supported by and consistent with the evidence of record." (AR 14.) Further, the ALJ failed to recognize that Berna's opinion is largely consistent with those of Rich's other treating providers, including Hall and Manion. In fact, Berna's opinion that Rich would be absent from work more than four days a month is even somewhat consistent with the opinion of Dr. John Brooklyn, who opined on two separate forms that Rich's impairments would cause her to be absent from work about three days a month. (AR 981, 985.) The Commissioner relies heavily on Dr. Brooklyn's opinion in support of the ALJ's decision that Rich was not disabled. But there is a striking inconsistency in Dr. Brooklyn's opinion – although he stated in notes from an office visit that he could see no reason why Rich could not work (AR 988), he checked off a box on two separate forms stating that Rich would be absent from work three days each month (AR 981, 985). On remand, the ALJ should seek clarity from Dr. Brooklyn regarding these statements. Moreover, as discussed earlier, if on remand the ALJ opts to give significant weight to this portion of Dr. Brooklyn's opinion, he should call a vocational expert to assist in determining whether being absent three days each month would

preclude an individual such as Rich from employment.

### C. Patricia Manion, APNP

For the same reasons that the ALJ failed to properly consider Berna's opinions, the ALJ also failed to properly consider the opinions of Rich's treating nurse, Patricia Manion, APNP. Manion opined that Rich was moderately impaired in her ability to interact appropriately with the public, supervisors, and co-workers; and would be absent from work more than four days each month. (AR 1148-49.) The ALJ gave "little weight" to this opinion on the grounds that "the opinion form was based upon [Rich's] self-reports and not Ms. Manion's observations of [Rich] based upon medical and treatment history." (AR 15.) This is another incident of the ALJ improperly cherry-picking certain portions from a medical opinion, to the exclusion of other relevant portions, without sufficient explanation. *See Scott*, 647 F.3d at 740; *Robinson*, 366 F.3d at 1083. Although it is true that Manion stated that a portion of her opinion was based on Rich's "report[ing]" (AR 1147), it does not appear that the remainder of her opinion was based solely on such reporting. Rather, Manion wrote in the opinion that her assignment of moderate restrictions to Rich regarding interacting with others was due to "PTSD" and an "inability to deal [with] men and crowds." (AR 1148.) On remand, the ALJ should reconsider Manion's opinions, this time considering the relevant factors stated above.

### Conclusion

This case must be remanded for further administrative proceedings because the Commissioner failed to adequately consider Rich's seizure disorder, depression, PTSD, and ADHD, separately and in combination; and did not properly assess the opinions of

14

Rich's treating medical providers.  Accordingly, the Court GRANTS Rich's motion (Doc. 6); DENIES the Commissioner's motion (Doc. 10); and REMANDS the matter for further proceedings and a new decision in accordance with this ruling.

      Dated at Burlington, in the District of Vermont, this 24th day of January, 2012.

                                          /s/ John M. Conroy  
                                          John M. Conroy  
                                          United States Magistrate Judge